IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT IN AND FOR
DUVAL COUNTY, FLORIDA

CASE NO.:  16-2018-CA-5686

DIVISION:    CV-G

BARBARA ANN LAND, Individually, and as
Personal Representative of the Estate of
BLANE S. LAND, Deceased, and
H.C. LAND, Individually,

       Plaintiffs,

vs.

TIMOTHY JAMES and
SHERIFF MIKE WILLIAMS, in his official
Capacity as Sheriff of the Jacksonville
Sheriff's Office and the Consolidated
City of Jacksonville, Florida,

       Defendants.

_____/

## SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff, BARBARA ANN LAND, individually, and as Personal Representative of the Estate of BLANE S. LAND, Deceased, by and through undersigned counsel, file this, their Second Amended Complaint for Damages and Demand for Jury Trial against the Defendants, TIMOTHY JAMES (hereinafter referred to as "Defendant, OFFICER JAMES"), SHERIFF MIKE WILLIAMS and CITY OF JACKSONVILLE (hereinafter referred to as "Defendant, COJ"), and state as follows:

## FOUNDATIONAL ALLEGATIONS

1.     This is an action for damages in excess of $30,000, exclusive of attorneys' fees, interest and costs, and Plaintiffs hereby demand a trial by jury. To file the instant Complaint, undersigned counsel is being required by order of the Supreme Court of Florida to contemporaneously complete a "Civil Coversheet" with a dollar figure as an estimated amount of claim for data collection and clerical processing purposes only. The full monetary value of the damages suffered by Plaintiffs are yet to be determined and will be decided in a verdict by the jury that judges the facts of this action in compliance with Article I, Section 22, Florida Constitution.

2.     The incident giving rise to this Complaint as described herein below occurred in Jacksonville, Duval County, Florida.

3.     At all times material hereto, Plaintiff, BARBARA ANN LAND, was the natural parent of BLANE S. LAND, deceased. Letters of Administration appointing Barbara Ann Land as Personal Representative of the Estate of BLANE S. LAND, deceased, are attached hereto as *Exhibit "A"*. Same were filed in Escambia County, Florida, which is Mrs. Land's place of residence.

4.     At all times material hereto, Plaintiff, BLANE S. LAND, deceased, resided in Pensacola, Escambia County, Florida continually for the last seven (7) years, providing daily assistance to his parents.

5.     At the time of the incident alleged herein, Plaintiff, BLANE S. LAND, deceased, was in Jacksonville, Duval County, Florida for business purposes.

6.     At all times material herein, Defendant, OFFICER JAMES, was a Jacksonville Sheriff's Office (hereinafter referred to as "JSO") employee and, by extension, was an employee of Defendant, COJ, and he was a resident of Jacksonville, Duval County, Florida.

7.     At all times material herein, Defendant, SHERIFF MIKE WILLIAMS (hereinafter referred to as "SHERIFF WILLIAMS") serves in his official capacity as Sheriff at Jacksonville Sheriff's Office (hereinafter referred to as "JSO") for the Consolidated City of Jacksonville, Florida. JSO is a municipal police department in Jacksonville, Duval County, Florida.  SHERIFF WILLIAMS is sued herein in his official capacity as Sheriff of JSO and is *sui juris*.

8.     Defendant, COJ, is a governmental entity and division of the government of the State of Florida with its principal place of business at 501 East Bay Street, Jacksonville, Florida 32254.

9.     On or about May 10, 2017 at or around 9:45 p.m., BLANE S. LAND was walking across University Boulevard east of its intersection with Philips Highway in Jacksonville, Duval County, Florida.

10.     At said time and place, Defendant, OFFICER JAMES, was employed by Defendant, COJ, and was acting within the course and scope of his employment as an officer with Defendant, COJ.

11.     At said time and place, Defendant, OFFICER JAMES, was operating a marked JSO motor vehicle owned by Defendant, COJ, within the course and scope of his employment with Defendant, COJ.

3

12.     At said time and place, and upon information and belief, OFFICER JAMES, was operating his vehicle under the color of law.

13.     At said time and place, Defendant, OFFICER JAMES, negligently struck and killed BLANE S. LAND, a pedestrian, with the vehicle he was operating.

14.     Upon information and belief, and additionally and/or alternatively, as a result of his personal actions, inactions and/or omissions, in connection with the operation of his vehicle, Defendant, OFFICER JAMES, acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property of BLANE LAND.

15.     Venue is proper in this county since the cause of action described herein arose here and the named Defendants reside in and are located in said county.

16.     Plaintiff has performed all conditions precedent prior to bringing this action as to each Defendant, including, but not limited to the conditions set forth in Section 768.28(6), Florida Statutes (attached hereto as *Exhibit "B"*), same have been waived, and/or Plaintiffs allege herein that Defendants should be equitably estopped from raising any defenses relating to Plaintiffs' strict compliance with same.

17.     Plaintiff, BARBARA ANN LAND, was the parent of BLANE S. LAND, deceased.

18.    The sole potential beneficiary of any recovery for wrongful death and her relationship to Plaintiff, BLANE S. LAND, deceased, is BARBARA ANN LAND, his biological mother.

19.    Plaintiff, BARBARA ANN LAND, as putative Personal Representative of the Estate of BLANE S. LAND, deceased, is entitled and empowered by the Florida Wrongful Death Act to recover for his parents as the sole statutory survivors and beneficiaries, and his estate, all the damages allowed pursuant to its provisions.

20.    Blane left behind his parents Barbara Ann Land and H.C. Land (now deceased, as well) of Pensacola; three sisters, Barbara Land Smith of Pensacola, Sheri Land Isgrigg of Clarksville, Indiana, and Stacy Land of Atlanta; four nephews, two nieces, a great nephew, and a loving extended family.

## FACTUAL ALLEGATIONS

21.    On or about May 10, 2017, at approximately 9:45 p.m., Officer James was responding to a robbery in marked patrol car at a high rate of speed.  At said time and place, he was not using all of the emergency equipment that was required to be activated on his vehicle.

22.    On May 10, 2017, at approximately 9:45 p.m., BLANE S. LAND, a pedestrian was crossing the street when Defendant, OFFICER JAMES, ran him over while travelling at a high rate of speed and made no attempt to brake or stop before the impact.

23.    Immediately after the incident, Defendants falsely presented the facts of this matter to indicate that BLANE S. LAND suddenly approached from

5

Defendant, OFFICER JAMES' right hand side, when in fact he walked across his vehicle fully and completely at a relatively low rate of speed before being impacted by the COJ/JSO vehicle.

24.     During a press conference initiated by Jacksonville Sheriff's Office on the scene, Defendant, COJ employees Chis Butler and Scott Dinghy made several statements, as summarized below, which do not appear remotely verifiable:

a. That a Jacksonville Fire and Rescue vehicle was "just ahead" of Officer James as it traveled eastbound on University Boulevard. Said vehicle allegedly had its emergency lights and sirens on;

b. That a gentleman "ran from the business," identified as a Burger King, directly in front of the Jacksonville Fire and Rescue vehicle;

c. That said gentleman went "in front of the [Jacksonville] Fire and Rescue vehicle;"

d. That said gentleman "stopped in the center lane;"

e. That the Jacksonville Fire and Rescue vehicle had to sound its air horn;

f. That as soon as the Jacksonville Fire and Rescue vehicle passed said gentleman, that he "darted back across" towards the roadway and was subsequently struck by Officer James;

g. That said gentleman referenced in subparts "a" through "f' was BLANE S. LAND;

6

h. Mr. Butler indicated he "didn't know" and "wouldn't rule out" a suicide attempt;

i. Mr. Butler indicated BLANE S. LAND "may appear to be homeless;" and

j. Mr. Butler indicated that Officer James was driving the speed limit.

25. Each and every statement and/or allegation hereinabove in Paragraph 23 hereinabove above is false, has never been retracted, can be disproven by video from the scene and eyewitness statements, and is evidence of Defendant, OFFICER JAMES', personal actions, inactions and/or omissions, in connection with the operation of his vehicle, wherein he acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property of BLANE LAND.

26. Defendant, COJ, publicly disclosed that the victim might have been a suicidal subject, and further indicated personnel from JFRD Rescue 21 stated the same individual who was the victim had walked out in front of them and that their vehicle had barely missed him. This is also malicious untruth.

27. Defendant, COJ's, statements and Defendant, OFFICER JAMES', statements, were made with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property of Blane Land. The statements made during the press conference were published to the YouTube page solely managed by the Defendant, COJ. No retraction has been issued to

these falsehoods, even after the receipt and review of the relevant surveillance footage.

28.   Media asked Defendant, COJ, and Jacksonville Sheriff's Office representatives Chis Butler and Scott Dinghy about the speed of Defendant, OFFICER JAMES', vehicle at the point of impact and Mr. Butler indicated that the speed was not yet determined and "there are (sic) equipment on all vehicles" and "they will be able to get that information." Witnesses have indicated, "the cop then hit his brakes [after he struck Land] and turned around," indicating Defendant, OFFICER JAMES, failed to keep a lookout, was distracted, and failed to even apply his brakes before hitting Blane Land and otherwise at all material times hereto.

29.   Even by admission of Defendant, COJ, the street lights provide lighting, the roadway is straight at this point, and motorists have an open view of the roadway and surrounding area.

30.   BLANE S. LAND was 6 feet and 3 inches in height and weighed 310 lbs.

31.   On May 11, 2017, Sheriff Mike Williams, on behalf of the City of Jacksonville/Jacksonville Sheriff's Office, confirmed in a written correspondence to the family of Blane Land that the incident involving the death of Mr. Land was being investigated.

32.    On May 11, 2017, the State Attorney's Office echoed Sheriff Williams' statements to Blane Land's family in a written correspondence that the incident was being investigated.

33.    Plaintiff's counsel put City of Jacksonville/Jacksonville Sheriff's Office on written notice of its representation of the Estate of Land for the purposes of a future claim on or about June 13, 2017 and in the same correspondence requested records from the Defendant, COJ, pertaining to Defendant, OFFICER JAMES', history and any history of similar incidents.

34.    After sending its request, Plaintiffs' counsel received an email confirmation from the Jacksonville Sheriff's Office on June 15, 2017 stating, "You will be contacted about the availability and/or provided with copies of the records in question."

35.    Neither Plaintiffs nor Plaintiffs' counsel ever received a phone call, a single record or any itemization despite specific reports to the contrary relayed by the Jacksonville Sheriff's Office.

36.    Ms. Agnes Carswell is in charge of public records for Jacksonville Sheriff's Office.

37.    Ms. Agnes Carswell does **not** appear on the Florida Bar's website as licensed to practice law in Florida.

38.    Ms. Agnes Carswell describes herself as: "**Public Records Manager - Office of Sheriff, Mike Williams. A Florida Certified Public Records Manager whose daily responsibilities include executing the daily operations of the management**

of public records for the Jacksonville Sheriff's Office. I ensure compliance with federal and state laws, statutes, rules and regulations related to public records management, record retention, and the dissemination of records for: The City of Jacksonville's Office of General Counsel, The Fourth Circuit State Attorney's Office, The Fourth Circuit Public Defenders Office, Fourth Circuit Attorneys, and the Jacksonville's Sheriff's Office. I manage and educate a staff of 20 Jacksonville (sic) Sheriff Office Public Records employees on how to respond to public records requests using the Florida Statute 119 for Public Records." (emphasis added).   *See* https://www.linkedin.com/in/iohnnettacarswell/.

39.     Ms. Carswell was involved in the records response process in relation to the matter pursuant to several subsequent emails between Plaintiff's counsel and Andrea Smith, another employee of the City of Jacksonville.

40.     On July 17, 2017 Plaintiff's counsel received an email from the Records Center for the City of Jacksonville/Jacksonville Sheriff's office stating:

> *"Documents regarding the Estate of Blane Land;*
> *Date of Loss: 05/10/2017[:] The cost to pull these records*
> *is as follows: 9-1-1 Comm Center Search/Process Fee:*
> *$287.25[;] Accreditation Fee: $90.09[;] Internal Affairs*
> *Search/Process Fee: $313,646.07[;] ISM Tech Fee:*
> *$71.46 [;] Patrol/Investigations Search/Process Fee:*
> *$259.08[;] and Public Records Unit Search/Process Fee:*
> *$333.96."*

41.     The response from the City of Jacksonville/Jacksonville Sheriff's Office asserted a non-itemized total for the documents in response to Plaintiffs' counsel's request to total ***$314,687.91***. Same also exhibited malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property of Blane Land.

42.     The response received by Plaintiffs' counsel was punitive in nature, grossly miscalculated, and/or fraudulent, and was sent by the City of Jacksonville with the knowledge that Plaintiffs' counsel was investigating a potential civil claim but needed full access to responsive documentation and information to be able to do so.

43.     After the media was debriefed, Plaintiffs' counsel received a copy of an itemization of the ***$314,687.91*** invoice.  Stated alternatively, the Jacksonville Sheriff's Office presented the media with a letter personally addressed to Plaintiffs' counsel before it was ever presented to Plaintiffs' counsel.

44.     Additionally, the Jacksonville Sheriff's Office has provided records related to this matter to the media and yet it refuses to provide those same records to victims.

45.     On July 18, 2017, the City of Jacksonville provided an itemized accounting of the cost of disclosing the entirety of documentation that was responsive to Plaintiffs' counsel's June 13, 2017 request.

46.     In response, Plaintiffs' counsel mailed the City of Jacksonville a letter of the subparts of the itemization it was ordering along with a check for those subparts totaling $1,456.74 (*attached hereto as **Exhibit "C"**).

47.     According to the medical examiner on the scene, BLANE S. LAND, sustained a broken skull, broken legs and his abdomen was "eviscerated." Mr. Land's internal organs were visibly outside of his body as a direct result of the force and speed of the crash. His mother has sustained extensive losses, losing not only her caretaker and son, but having had to endure compounded pain and suffering as a result of Defendant, COJ's, and Defendant, OFFICER JAMES', un-retracted and purposeful untruths.

## OFFICER JAMES' CONSISTENT PATTEN OF MISCONDUCT

48.     Officer James was hired by the Jacksonville Sheriff's Office on or about January 27, 2014.

49.     In the past several years, Officer James has been involved in multiple motor vehicle collisions and other vehicle-related incidents, including the following:

> a. A chargeable but sustained incident in which his vehicle ran into a tree on or about August 22, 2014;
>
> b. An incident in which he wrecked his vehicle by purportedly hitting a deer on or about September 10, 2014;

c.  An incident in which he was off-duty in his patrol vehicle and was captured failing to stop at a red light by a traffic camera, amongst other violations on or about September 9, 2015;

d.  Seemingly failing to report damages to the undercarriage of his patrol vehicle, which was later noted by quick service on or about September 25, 2015, allegedly from "bottoming out" a month earlier;

e.  A chargeable traffic crash on or about December 15, 2015, for which he received counseling and training;

f.  A chargeable crash into a pedestrian vehicle on or about February 23, 2016, for which he was seemingly cleared;

g.  An incident in which he claimed his patrol car was burglarized on or about November 2, 2016 wherein someone purportedly stole his service handgun from the inside of his patrol vehicle (the following day, a bystander/witness found a service handgun with an entire loaded magazine and one round in the chamber and an entire holster lying on the road on the on-ramp of I-95 and Old St. Augustine Road and returned it to Jacksonville Sheriff's Office); and

h.  The incident which is the subject of Plaintiffs' Second Amended Complaint, which occurred on or about May 10, 2017.

50.     Officer James repeatedly utilized social media to post about his work activities and thoughts on policing, including the following postings from January 2016 through March 2016, all of which eventually resulted in a citation for "failure

to conform to work standards" and a directive from Undersheriff Ivey to "not use police powers nor wear the police uniform."

    a. Officer James posted, **"It's a BELEO kinda night. Someone just learned a hard lesson about not showing your ass in Jacksonville. 3 felonies, 2 misdemeanors and an ass whoopin to boot. Lol. I love my job."**

    b. Officer James posted, **"Yep. It's that kinda night already. Someone's getting a size 13 boot to the ass tonight. I can feel it."**

    c. Officer James posted, "<u>**JSO dirty deeds done dirt cheap.**</u>"

    d. Officer James posted, "**…if you ask me 'can I go this way,' I'm going to drag your ass out of your car through your window and monkey stomp you. #realtalk."**

    e. Officer James posted, "**…be polite, be professional and have a plan to kill everyone you meet…"**

    f. Officer James posted, "**Not in a good mood. Everyone might want to watch what they do or say around me. About to go off like a grenade!"** with a skull attached.

    g. Officer James posted, "**sitting in the ghetto making that off duty dollar."**

    h. Officer James posted, "**…Feeling like ripping someone's head off. Luckily for the general public, I'm going to the gym to damage myself. There are literally millions of people to fuck with. Right now, I'm the one you might want to bypass. Pure fucking Viking right now."**

   i.   Officer James posted, **"It's that kinda night with this kinda mood. Feeling my inner Barbarian tearing its way out. Don't push your luck tonight, cuz I'm about to snap."**

   j.   Officer James posted a photo of himself with an AR-15 in one hand and bottle of liquor in the other hand.

51.   Officer James went "hands-on" with an arrested individual after allegedly being kicked and spat on in the sally port of the Pre-Trial Detention Center on or about April 2, 2015.

52.   Officer James was cited for "failure to conform to work standards," which was sustained and resulted in counselling.

53.   Officer James was previously disciplined for maintaining a non-platonic relationship with a JSO recruit against office policy.

54.   While off-duty, Officer James attended a Pearl Jam concert in April 2016 and threw another person to ground repeatedly.

55.   On or about April 26, 2017. Officer James was involved in an incident with a patient at Shands Hospital, where he allegedly spit at and tackled Daniel Nyman.

56.   Officer James thereafter beat a handcuffed teenager, Elias Campos, about the face, knocking teeth loose, chipping teeth and leaving permanent scarring on his face on June 10, 2017. James' superior officer, JSO Sergeant Howell, observed and reported James for administering fist blows to Elias

Campos. Howell indicated he could see James' arm coming up and down between four (4) and six (6) times in a beating motion.

## COUNT I: VIOLATION OF SECTION 119, FLA. STAT.
### (ESTATE OF BLANE LAND AND BARBARA ANN LAND v. CITY OF JACKSONVILLE)

Plaintiffs re-allege Paragraphs 1 through 56 as if set forth fully herein and further alleges:

57.    At the time of filing Plaintiffs have complied with Section 119.12(b), Fla. Stat.

58.    Plaintiffs' public records request to Defendant, COJ, as referenced herein was not made for any improper purpose, or to cause a violation of this Section, or for any frivolous purpose.

59.    Plaintiffs' public records request to Defendant, COJ, as referenced herein was the only legitimate means by which to investigate the incident that led to Blane Land's death, to investigate Officer Timothy James repeated and consistent abuses while on the job and his continued employment by the City of Jacksonville/Jacksonville Sheriff's Office despite the clear danger that he posed to the citizens he was sworn to protect, to investigate the Jacksonville Sheriff's Office's role in the handling similar incidents and handling of and continued employment of other similar "problem officers," and eventually to put Defendant, COJ, on full notice of the entirety of those claims such that they could have a meaningful opportunity to investigate those claims fully.

60.     As a result of its ***$314,687.91*** non-itemized invoice dated July 17, 2017, in response to Plaintiffs' counsel's June 13, 2017 public records request, Defendant, CITY OF JACKSONVILLE, violated Section 119.12, Fla. Stat.

61.     As a result of its July 18, 2017 itemized calculation that still estimated only one portion of the responsive documentation to Plaintiffs' counsel's public records request to cost ***$312,682.30***, Defendant, COJ, violated Section 119.12, Fla. Stat.

62.     While the original estimate for the responsive documents was reduced into an itemization, including one category that totaled roughly $2,000 less than the original non-itemized total, Defendant, COJ, only defended its valuation by stating that even reviewing the responsive documentation for redaction would take a "very rough estimate" of 6,667 hours.

63.     The actions alleged hereinabove were either or both an unlawful refusal to permit a public record to be inspected or copied.

64.     Additionally, Section 119.01(2)(a), Fla. Stat. states that "[a]utomation of public records must not erode the right of access to those records. As each agency increases its use of and dependence on electronic recordkeeping, each agency must provide reasonable public access to records electronically maintained . . ."

65.     On August 1, 2017, in a written response to Plaintiffs' counsel's notification that the entirety of the records that it had both requested and paid for already had still not been fully or correctly disclosed and released, Ms. Andrea

Smith of the Jacksonville Sheriff's Office stated that "[a]s a result of your June 15 request, we have discovered some deficiencies in GovQA, and are working to improve them."

WHEREFORE, Plaintiffs, the ESTATE OF BLANE LAND and BARBARA ANN LAND, demand reasonable costs of enforcement, including for attorneys' fees as allowed by Section 119.12, Fla. Stat., and for such other relief as this Court deems just and proper.

## COUNT II: FEDERAL SUBSTANTIVE DUE PROCESS VIOLATION
### (ESTATE OF BLANE LAND AND BARBARA ANN LAND v. CITY OF JACKSONVILLE AND TIMOTHY JAMES)

Plaintiffs re-alleges Paragraphs 1 through 56 as if set forth fully herein and further alleges:

66.   For the reasons stated herein, Defendant, OFFICER JAMES, is an egregious example of repeated officer misconduct.

67.   For the reasons stated herein, Defendant, COJ, and specifically the Jacksonville Sheriff's Office, protected Defendant, OFFICER JAMES, as an officer and also prevented Plaintiffs from obtaining records related to his misconduct.

68.   Substantive due process violations have been recognized under federal law as violations of federal civil rights.

69.   Persons injured by police activity which does not appear to violate a specifically enumerated constitutional right may argue and alleged that the conduct violates their substantive due process rights to life or liberty.

70.    Where misconduct of a government actor is not covered by a more definite provision of the Constitution, it may constitute a substantive due process violation.

71.    In <u>County of Sacramento v. Lewis</u>, 523 US 833 (US 1998), the United States Supreme Court said, "The touchstone of due process is protection of the individual against arbitrary action of the government."

72.    The Court underlined that "only the most egregious official conduct can be said to be "arbitrary in the constitutional sense."

73.    The Court concluded that abuses of executive power which reach that level of arbitrariness are those which "shock the conscience."

74.    The allowed misconduct of Defendant, OFFICER JAMES, "shocks the conscience."

75.    The reckless untruths about Blane Land's last moments "shock the conscience."

76.    The refusal to provide records and providing his family with an **$314,687.91** invoice "shocks the conscience."

77.    Making matters worse, Defendant, COJ's, Jacksonville Sheriff's Office's chief of public records employee, Agnes Carswell, is a non-lawyer. Despite that distinction, Defendant, COJ's, Jacksonville Sheriff's Office held her out as a lawyer and allowed her to publicly hold herself out as a lawyer.

78.    The Florida Bar even issued a letter of advisement to Agnes Carswell on October 28, 2019.

79.    As a result, Plaintiff has incurred damages.

WHEREFORE, Plaintiffs, the ESTATE OF BLANE LAND and BARBARA ANN LAND, demand judgment against Defendants, CITY OF JACKSONVILLE and TIMOTHY JAMES, for compensatory damages, costs, interest as allowed by law, and for such other relief as this Court deems just and proper.

### COUNT III: DEFENDANT TIMOTHY JAMES'S VIOLATIONS OF 42 U.S.C. 1983

Plaintiffs re-alleges Paragraphs 1 through 56 as if set forth fully herein and further alleges:

80.    This claim is brought pursuant to 42 U.S.C. §§1983 and 1988 for violation of Plaintiffs rights under the Fourth and Fourteenth Amendments to the United States Constitution.

81.    The actions alleged above deprived DECEDENT BLANE LAND of clearly defined, established and well-settled Constitutional rights specifically: (a) the freedom from the use of excessive and unreasonable force; (b) the freedom from unreasonable seizure; and (c) the freedom from deprivation of liberty without due process of law.

82.    Defendant TIMOTHY JAMES acted recklessly, maliciously, or deliberately indifferent toward DECEDENT BLANE LAND when he deprived him of his Constitutional rights.

83.    As a direct and proximate result of the aforementioned acts and omissions of Defendant TIMOTHY JAMES, DECEDENT BLANE LAND, suffered bodily injury and resulting pain and suffering and an ultimate death.

84.     The losses by Plaintiffs, the ESTATE OF BLANE LAND and BARBARA ANN LAND, are permanent or continuing in nature.

WHEREFORE, the Plaintiffs, the ESTATE OF BLANE LAND and BARBARA ANN LAND, demand judgment for damages, including compensatory damages, punitive damages, all costs, interest and reasonable attorney's fees provided under the applicable law, against the Defendant, TIMOTHY JAMES, and any other such relief this Honorable Court deems reasonable and just.

## COUNT IV - DEFENDANT TIMOTHY JAMES'S VIOLATION OF 42 U.S.C. § 1983 FOR DEPRIVATION OF MEDICAL CARE

Plaintiffs re-alleges Paragraphs 1 through 56 as if set forth fully herein and further alleges:

85.     This claim is brought pursuant to 42 U.S.C. §§1983 and 1988 for violation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

86.     As previously discussed, Defendant encountered Plaintiff, crashing into him at an excessive rate of speed while traveling without sufficient warning to pedestrians at such a speed. As such, it was Defendant, TIMOTHY JAMES, who put decedent in peril and he owed a duty under the law to assist him.

87.     Defendant struck the decedent so forcefully, he knocked his pants off of him.

88.     Instead of getting immediate medical treatment, Defendant sought to alter the truthful narrative of what occurred as well as deprive the decedent of moments or a lifetime of survival.

21

WHEREFORE, the Plaintiffs, the ESTATE OF BLANE LAND and BARBARA ANN LAND, demand judgment for damages, including compensatory damages, punitive damages, all costs, interest and reasonable attorney's fees provided under the applicable law, against the Defendant, TIMOTHY JAMES, and any other such relief this Honorable Court deems reasonable and just.

**Count V - DEFENDANT SHERIFF WILLIAMS' VIOLATION OF 42 U.S.C. § 1983**

Plaintiff adopts and re-alleges Paragraphs 1 through 56 as if set forth fully herein and further alleges as follows:

89.	This claim is brought pursuant to 42 U.S.C. §§1983 and 1988 for violation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

90.	At all times material, Defendant, SHERIFF WILLIAMS, was Sheriff of JSO and therefore the supervisor of all law enforcement personnel employed by the City of Jacksonville.

91.	Defendant, SHERIFF WILLIAMS, is a person within the meaning of 42 U.S.C. § 1983.

92.	Defendant, SHERIFF WILLIAMS, is liable because of his policy and custom of encouraging, tolerating, permitting, and ratifying a pattern of improper conduct by law enforcement under his supervision of which he knew or reasonably should have known.

93.     During the time leading up to this incident, and to date, many notices of intent to sue and many lawsuits alleging breaches by JSO of people's civil rights.

94.     During the time leading up to this incident, and to date, Officers are repeatedly arrested at JSO for various violations of civil rights.

95.     Defendant, SHERIFF WILLIAMS, permitted, encouraged, tolerated and ratified a pattern and practice of unjustified, unreasonable and illegal use of force by law enforcement personnel under his tenure.

96.     Defendant, SHERIFF WILLIAMS, failed to discipline or eradicate known instances of wrongful and excessive use of force by officers under his direction and employ.

97.     Defendant, SHERIFF WILLIAMS, refused to adequately investigate complaints of previous incidents of wrongful and excessive use of force by officers under his direction and employ and instead caused law enforcement personnel to believe such conduct is permissible.

98.     Defendant, SHERIFF WILLIAMS, maintained a system of review of complaints of excessive use of force by JSO law enforcement personnel and employees which has failed to identify the use of excessive force by those officers and employees and subject those employees and law enforcement personnel, who use excessive force, to discipline, close supervision or restraining to the extent that it has become the de facto policy and custom by Defendant, SHERIFF

WILLIAMS, to tolerate the use of excessive force by law enforcement personnel under his direction and employ.

99.     Defendant, SHERIFF WILLIAMS, maintained a failed system, leading to the deprivation of Plaintiff, MAYRA MARTINEZ, of medical attention, as alleged herein, by allowing officers to tell medical professionals an inaccurate, incomplete and/or untrue description of her injuries, by failing to render any aid for the injuries caused, by leaving her unconscious for a prolonged period of time causing her increased injuries, by refusing medical attention and otherwise by not allowing her to be seen by a doctor. Not only were multiple officers present for the incidents of batter, excessive use of force, and deprivation of medical attention as alleged herein, but the video feed was contemporaneously accessible to all supervisory employees of JSO.

100.    The foregoing acts, omissions, and systematic deficiencies exist either because of polices and customs of Defendant, SHERIFF WILLIAMS, or the failure to administer the policies and customs, such that officers and employees under the employ and direction of Defendant, SHERIFF WILLIAMS, are unaware or alternatively unconcerned with the rules and laws governing permissible use of force and to believe that such use of force is entirely within the discretion of the deputies and employees and that such use of force would not be honestly and properly investigated, all with the foreseeable result that officers and employees are more likely to use excessive force in situations where such force is not necessary, reasonable or legal.

101.   Making matters far worse it the sheer pattern and practice of civil rights violations and recklessness specifically by Defendant, TIMOTHY JAMES.

102.   Defendant, SHERIFF WILLIAMS, through COJ, employed an officer despite its knowledge of his extensive history of misconduct, injury to others and threats to the public under the color of law.

103.   Additionally, SHERIFF WILLIAMS, through COJ, employed an officer with a history of problematic operation of a motor vehicle.

104.   Defendant, SHERIFF WILLIAMS, through COJ, knew or reasonably should have known that Defendant, OFFICER JAMES', actions were substantially certain to cause or could result in great bodily harm or death to others.

105.   As a direct and proximate result of the foregoing conduct, BLANE S. LAND sustained injuries that resulted in his death. As a result of his death, the Estate of BLANE S. LAND has suffered damages including medical or funeral expenses that have become a charge against the Estate or were paid by or on behalf of the decedent.

106.   Further, as a direct and proximate result of the aforementioned conduct of Defendant, OFFICER JAMES, for which 104.  Defendant,       SHERIFF WILLIAMS, is vicariously liable, and the death of Plaintiff, BLANE S. LAND, deceased, the Estate has lost its prospective net accumulations that might have reasonably been expected but for the wrongful death, reduced to present value. The Estate and survivors are also entitled to all other damages as allowed by 768.21, Florida Statutes.

WHEREFORE, Plaintiff, BARBARA ANN LAND, as putative Personal Representative of the Estate of BLANE S. LAND, deceased, demands judgment against SHERIFF MIKE WILLIAMS, in his official capacity as Sheriff of the Jacksonville Sheriff's Office and the Consolidated City of Jacksonville, Florida, for compensatory damages, costs, interest as allowed by law, and for such other relief as this Court deems just and proper.

### COUNT VI: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (BARBARA ANN LAND v. CITY OF JACKSONVILLE)

Plaintiff re-alleges Paragraphs 1 through 56 as if set forth fully herein and further alleges:

107.   After BLANE S. LAND was killed, Defendant, COJ, intentionally, and with reckless indifference, publicized false facts via postings to its social media accounts and a press conference to news media and concurrently did not disclose - and has not disclosed - the true facts of what happened during the subject incident.  Said false story was spread by Defendants, COJ and OFFICER JAMES, and their representatives in order to hinder prosecution or otherwise effectuate any liability, discipline or charges against itself.

108.   Defendant, COJ, knew or reasonably should have known that communicating false information to fellow police officers or to the widespread community would not only hinder the prosecution of the person ultimately responsible for Plaintiff, BLANE S. LAND's, death, but would also cause serious emotional harm to his family, including his mother and father, siblings and other family and friends.

109.    Defendants, COJ and OFFICER JAMES, made said statements, which were known to be false, in reckless disregard for the emotional harm which is certain to result from said actions.

110.    Said actions and false statements made and disseminated to the public by Defendants, COJ and OFFICER JAMES, were utterly intolerable in a civilized society and were extreme and outrageous.

111.    Said statements caused the State Attorney's Office to refuse any investigation of the subject incident that led to BLANE S. LAND's death and otherwise lead to widespread reporting of this as "suicide by cop," a homeless person being hit and other speculation and lies.

112.    Said torment, untruthfulness and other extreme and outrageous conduct by Defendants, COJ and OFFICER JAMES, caused Plaintiff, BLANE S. LAND's, parent and survivor, BARBARA ANN LAND, to experience extreme emotional trauma and other emotional harms as the investigation of their son's death was thwarted, delayed, and otherwise whitewashed. Said emotional trauma and damages were proximately caused by Defendants, COJ and OFFICER JAMES.

WHEREFORE, Plaintiff, BARBARA ANN LAND, demands judgment against Defendant, CITY OF JACKSONVILLE, for compensatory damages, costs, interest as allowed by law, and for such other relief as this Court deems just and proper.

## COUNT VII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (BARBARA ANN LAND v. TIMOTHY JAMES)

Plaintiff re-alleges Paragraphs 1 through 56 as if set forth fully herein and further alleges:

113.  After BLANE S. LAND was killed, Defendant, OFFICER JAMES, intentionally, and with reckless indifference, contributed to publication of false facts via postings to Defendant, COJ's, social media accounts and a press conference to news media and concurrently did not disclose - and has not disclosed - the true facts of what happened during the subject incident.  Said false story was spread by Defendants, OFFICER JAMES and COJ, and their representatives in order to hinder prosecution or otherwise effectuate any liability, discipline or charges against itself.

114.  Defendant, OFFICER JAMES, knew or reasonably should have known that communicating false information to fellow police officers or to the widespread community would not only hinder the prosecution of the person ultimately responsible for Plaintiff, BLANE S. LAND's, death, but would also cause serious emotional harm to his family, including his mother and father, siblings and other family and friends.

115.  Defendants, OFFICER JAMES and COJ, made said statements, which were known to be false, in reckless disregard for the emotional harm which is certain to result from said actions.

116.   Said actions and false statements made and disseminated to the public by Defendants, OFFICER JAMES and COJ, were utterly intolerable in a civilized society and were extreme and outrageous.

117.   Said statements caused the State Attorney's Office to refuse any investigation of the subject incident that led to BLANE S. LAND's death and otherwise lead to widespread reporting of this as "suicide by cop," a homeless person being hit and other speculation and lies.

118.   Said torment, untruthfulness and other extreme and outrageous conduct by Defendants, OFFICER JAMES and COJ, caused Plaintiff, BLANE S. LAND's, parent and survivor, BARBARA ANN LAND, to experience extreme emotional trauma and other emotional harms as the investigation of their son's death was thwarted, delayed, and otherwise whitewashed.  Said emotional trauma and damages were proximately caused by Defendants, OFFICER JAMES and COJ.

WHEREFORE, Plaintiff, BARBARA ANN LAND, demands judgment against Defendant, TIMOTHY JAMES, for compensatory damages, costs, interest as allowed by law, and for such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for all issues so triable.

Dated this 31st day of March, 2021.

**Law Office of Phillips & Hunt**

/s/ John Phillips
**JOHN M. PHILLIPS, ESQUIRE**

29

Florida Bar Number:  0477575
**WILLIAM, K. WALKER, ESQUIRE**
Florida Bar Number:  0085552
212 N. Laura Street
Jacksonville, FL 32202
(904) 444-4444
(904) 508-0683 (facsimile)
Attorneys for Plaintiffs
jphillips@floridajustice.com
william@floridajustice.com
melissa@floridajustice.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy hereof has been furnished to Stephen J. Powell, Esq., Office of General Counsel City of Jacksonville, 117 West Duval Street, Suite 480, Jacksonville, FL  32202 (Attorney for Defendant JSO); by email to spowell@coj.net ; and Paul A. Daragjati, Esq., Paul Daragjati, PLC, 5530 Beach Blvd., Jacksonville, FL  32207 (Attorney for Defendant Timothy James) at paul@daragjatilaw.com ; this **31st** day of March, 2021.

**Law Office of Phillips & Hunt**

/s/ John Phillips
**JOHN M. PHILLIPS, ESQUIRE**
Florida Bar Number:  0477575
**WILLIAM, K. WALKER, ESQUIRE**
Florida Bar Number:  0085552
212 N. Laura Street
Jacksonville, FL 32202
(904) 444-4444
(904) 508-0683 (facsimile)
Attorneys for Plaintiffs
jphillips@floridajustice.com
william@floridajustice.com
melissa@floridajustice.com